IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREER W. TATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 04cv0820 |
| | ) | |
| U.S. FINANCIAL LIFE INSURANCE | ) | |
| COMPANY, a Corporation, and | ) | |
| WILLIAMS INSURANCE SERVICES, INC., | ) | |
| a corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

September 1, 2006

Presently before the Court are the following:

1) MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendant U.S. FINANCIAL LIFE INSURANCE COMPANY ("USFL") (Document Nos. 18 and 19);

2) MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendant Williams Insurance Services, Inc. ("Williams Insurance") *(Document Nos. 23 and 24)*;

3) CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT filed by Plaintiff, Greer W. Tate (*Document No. 33*); and

4) REPLY BRIEF IN SUPPORT OF USFL'S MOTION FOR SUMMARY JUDGMENT *(Document No. 37).*

After careful consideration of Defendants' Motions, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff, Greer W. Tate, on her claims of breach of contract, bad faith, and negligence. Therefore, the Court will grant the motion for summary judgment of Defendant, U.S. Financial Life Insurance Company, and will grant the motion for summary judgment of Defendant Williams Insurance Services, Inc.

## PROCEDURAL BACKGROUND

Plaintiff, Greer W. Tate ("Plaintiff") filed this action on June 2, 2004, in which she claims that she is entitled to life insurance policy benefits under a USFL policy for which her husband, Chapman Douglas Tate, Jr. ("Decedent") applied. Plaintiff's Complaint sets forth three counts. In Count I, she alleges that USFL breached the policy at issue by denying that the policy was in force and by failing to pay her death benefits in the amount of $300,000. In Count II, Plaintiff alleges that this same conduct constitutes bad faith within the meaning of Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371. In Count III, Plaintiff, in the alternative, alleges a claim against Williams Insurance for negligence in failing to timely deliver the policy and in failing to take all steps necessary to place the policy in force.[1]

---

[1] Plaintiff claims against Williams Insurance are conditional in nature. Only if the policy is found not to have been in force at the time of Decedent's death, then Williams Insurance is alleged to have been negligent in failing to insure that all necessary steps were taken to place to the policy in effect. *See* Complaint, at ¶ 15.

Defendants have each filed a motion for summary judgment. USFL contends that it is entitled to summary judgment because the undisputed material facts show that the policy was not in force at the time of Decedent's death. Williams Insurance contends that it is entitled to summary judgment because the undisputed facts of record fail to establish that Williams Insurance was negligent. Plaintiff has filed a consolidated memorandum in opposition in which she argues that defendants' motions for summary judgment should be denied.

## BACKGROUND

The facts relevant to this discussion, and viewed in the light most favorable to Plaintiff, are as follows. In or around August 2002, Decedent, a 59 year old Pennsylvania resident, was researching and obtaining life insurance quotes via the internet. On August 12, 2002, Jeffrey Kinser ("Kinser"), a general agent for Williams Insurance, provided Decedent with several preliminary life insurance policy quotes, contingent upon the results of a physical examination.

Decedent submitted to a physical examination in September 2002 for the purpose of obtaining a life insurance policy. After the physical examination, Williams Insurance learned for the first time that Decedent had a history of heart problems, which made him an "impaired risk." Williams Insurance would typically submit risk cases to insurance broker Calkins & Kramer, which in turn would seek impaired risk insurance rates with insurers willing to insure impaired risk individuals. USFL is known as an insurer that is willing to insure impaired risk cases.

On September 6, 2002, Kinser forwarded the subject USFL life insurance application to Decedent. Several "Declarations" were listed above the signature line on the USFL application, which contained specific conditions precedent to life insurance coverage. Specifically, the Declarations stated, in bold-face type, as follows:

**(3a)   Any prepayment made with this application will be subject to the provisions of the Temporary Life Insurance Agreement;**

**(3b)   If there is no payment made with this application, the policy will not take effect until both:**

   **(I)   the first payment is paid during the lifetime of the proposed insured and while his/her health and the facts and other conditions affecting his/her insurability are as described in Part I and Part II of this application;**

   **(II)   and until the policy is delivered to the proposed owner.**

(Appendix, Exhibit F) (emphasis in original).

As of November 7, 2002, Decedent had failed to return a completed application, so Kinser sent a reminder email to him. In the email, Kinser wrote "Please me know if you have any questions or have already mailed [the application] and for some reason I have not received it." (Appendix, Exhibit D, TATE 00066-67.)

On December 2, 2002, Decedent completed, signed, and returned the application without payment of the premium to Kinser. On December 11, 2002, Kinser acknowledged receipt of the application and notified Decedent that several questions on the application remained unanswered, *e.g.*, how long Decedent had resided at his current address, his business

address, and how long Defendant had been employed at that business. (Appendix, Exhibit D, TATE 00066-65.)

On January 7, 2003, Kinser wrote Decedent and asked him to contact USFL directly to complete a personal interview via phone. Two days later, on January 9, 2003, Decedent informed Kinser that he had completed the personal interview and also noted that USFL would follow up with his personal care physician. Decedent also asked Kinser, "What are we talking about - payment and coverage?" (Appendix, Exhibit D, TATE 00066-63.)

Kinser responded the next day with the following email:

> The only thing I can tell as of yet is the coverage amount and the length of term. I can only approximate the premium. As soon as I have a firm offer, I will let you know. In the meantime, if you have any other questions, please let me know.
>
> 1) Amount - $300,000 (we can still modify this)
>
> 2) Term Length - 10 years (we can still modify this as well)
>
> 3) Approx. premium - $1500 to $2000 annually.

(Appendix, Exhibit D, TATE 00063.)

On Tuesday, January 14, 2003, via email, Kinser provided Defendant with the actual premium and policy information, wherein he quoted the offered rate from USFL of 10 years, $300,000, for $1774.00 annually. Kinser also noted that the next best offer was over $2000. Kinser indicated that he would check back with Decedent on Friday, January 17, 2003 to see what Decedent "would like to do."

By correspondence dated January 14, 2003, USFL notified Decedent directly that it was offering a policy of insurance and informed Decedent as follows:

>Your agent will be contacting you shortly to deliver your policy and explain its benefits in detail to you.  He/she will collect the premium due and have you sign any necessary amendment and/or delivery receipt.  If all delivery requirements are satisfied and your health has not changed, your policy will be placed in force with U.S. Financial Life Insurance Company.

Appendix, Exhibit L.  The USFL Delivery Receipt required Decedent to verify that:

>By their signature below, the Owner (and if different, the Proposed Insured) verify that the following statements are TRUE AND CORRECT to the best of their knowledge and belief.
>
>>1.   Since the date of the application, the proposed insured has not received any medical attention, examination, testing or treatment of any nature and has not received any new prescriptions or medical advice or opinions.
>>
>>2.   Since the date of the application, the proposed insured has not suffered any illness, pain or change in physical, mental or medical condition and is in the same state of health.
>>
>>3.   Since the date of the application, the proposed insured has not scheduled any appointment or testing with any health professional or facility in the future.

Appendix, Exhibit L.

On or about January 17, 2003, Kinser received from Calkins & Kramer a package which contained the USFL policy, the "Policy Transmittal" form to delivery receipt, the illustration, and the amendment.  In his deposition, Kinser testified that instead of mailing the policy and other delivery documents to Decedent, he contacted Decedent to confirm that he wanted to purchase the policy.

On February 6, 2003, following up on a January 28, 2003 conversation with Decedent, Kinser emailed Decedent, as follows:  "Sorry to be a pest, but just wanted to let you know that we have until approximately the 22nd or 23rd (Feb) on your policy.  I hope things are

better with your Father.  Please let me know if you have any questions.  Regards, Jeff."

(Exhibit I).   Decedent wrote back to Kinser later that same day, as follows:

> I received a letter from U.S. Financial Life dated 1/14/03 stating that I
> have been approved for coverage.  The last paragraph says the agent will
> be contacting me shortly to deliver the policy and explain its benefits in
> detail.  I have been awaiting his call.  I am not sure I understand your
> email.  What is the next step?

(Appendix, Exhibit D, TATE 00059.)    Kinser responded the following morning, February 7, 2003, as follows:

> I am the agent representing US Financial . . . . our firm shopped your
> application with almost 40 insurers, and U.S. came back with the best rate.
>
> The email I sent you a couple weeks back gave you the rate for the term
> and benefit you applied for.  You were approved for $300,000/10 yr term
> at $1774 annually.  The next step would be to either take that offer, or if
> you like, we can adjust the coverage amount or term to fit your needs.
>
> Please give me a call to go over your options when you have a moment.

(Appendix, Exhibit D, TATE 00061.)

Decedent did not reply to the February 7, 2003 email from Kinser, so on February 11, 2003, Kinser sent a follow-up email asking "Did you get my previous email?  Please let me know - as offer from US Financial is about to expire."  (Appendix, Exhibit D, TATE 00059.)

By email dated February 12, 2003, Plaintiff, Greer W. Tate, responded to Kinser with the following email:

> We did get the email.  Doug has been working a lot of long hours and has
> not had a chance to call you.  We are interested in getting this done and
> need to talk to you as soon as possible.  When is the best time to contact
> you by phone, etc.  Greer (wife) for Doug.

(Appendix, Exhibit D, TATE 00059.)

Kinser replied to Plaintiff's email that same day and provided her with his office number and cell phone number. He also informed Plaintiff that he would be out of the office that coming Friday, February 14, 2003, but would be back in the office the following Monday.

Decedent orally accepted the policy on Thursday, February 13, 2003, and, at Decedent's request, Kinser overnighted the policy, the "Policy Transmittal" form and other related documents to him on February 17, 2003.[2] Decedent unexpectedly died on February 17, 2003 of a heart attack while visiting his father in Virginia. Kinser, as promised, mailed the policy on February 17, 2003, without knowledge of Decedent's death.

The package arrived at the Tate home on February 18, 2003, the day after Decedent died. The Plaintiff found the package on February 23, 2003, when she returned to Pittsburgh after her husband's funeral in Virginia. Plaintiff called Kinser on February 23, 2003 and informed him that her husband had died. Thereafter, Kinser advised Kyle Calkins ("Calkins") at Calkins & Kramer that Decedent had died. On February 28, 2003, Calkins informed USFL that Decedent had passed.

On or about February 28, 2003, Plaintiff sent a check for the first annual premium payment to Kinser, which was apparently forwarded by Kinser to Calkins & Kramer, which in turn forwarded it to USFL. The premium payment was received by USFL on or about March 1, 2003. By letter dated March 5, 2003, USFL returned the check and indicated that as the policy

---

[2] The record reflects that Decedent had instructed Kinser to wait until February 17, 2003, to overnight the policy as he was traveling to see his ill father in Virginia and would not be back in Pennsylvania to sign the delivery receipt until the following Monday or Tuesday.

had been marked as "not taken" as of February 24, 2003, the policy was not "in force" and no coverage existed.

## STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

## DISCUSSION

A.       Motion for Summary Judgment filed by USFL

    1.       *Breach of Contract Claim*

In support of its Motion for Summary Judgment, USFL relies upon a decision of the United States District Court for the Eastern District of Pennsylvania issued in the case *Wise v.*

*American General Life Insurance Company*, 2005 U.S. Dist. LEXIS 4540 (March 22, 2005). In *Wise,* the district court was presented with a contractual interpretation issue in the context of facts and circumstances quite similar to the case currently pending before this Court and that court held that no policy was in force. On August 21, 2006, the Court of Appeals for the Third Circuit affirmed the district court's dismissal of the case and found that because, as of the date of Wise's death he had not accepted the insurance contract by paying the premium, the life insurance policy never took place. *See Wise v. American General Life Ins. Co.*, --- F.3d ---, 2006 WL 23950570 (3d Cir. Aug. 21, 2006).

The facts, issues, and arguments in *Wise* are virtually identical to those in this case. In *Wise,* American General mailed to William Wise ("Wise") an application which consisted of two parts: Part A of the application required the applicant to disclose personal information for purposes of obtaining a policy. It also described, among other things, an option for a "Limited Temporary Life Insurance Agreement." The application stated that Temporary Insurance was available to the applicant only if 1) the full first modal premium was submitted with the application and 2) the applicant had not had certain health problems and was not more than seventy years. Part A of the application also required Wise's signature acknowledging that he had read the application, that his statements were true and complete, and that he understood that his application would be the basis of the policy. Wise was also asked to affirm that:

> Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect pursuant to this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the first full modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

*Wise*, 2006 WL 2390570 at * 1.

Wise completed the application, signed both Part A and Part B, and returned the application on or about February 7, 2004, without submitting a premium payment with his application. American General issued a life insurance policy to Wise on March 3, 2004, who received the policy on March 10, 2004. The policy stated that the first premium was due on the date of issue and that insurance would "not take effect until that premium [was] paid." *Id*. at *2.

> The letter accompanying the policy briefly described the policy and stated:
>
> *To place this coverage inforce (sic) the documents listed below need to be completed, signed, and returned:*
>
> Amount Due $600.00 (annual premium due)
>
> *Check must be made payable to American General Life Insurance Company*
> Delivery Receipt
> All the above requirements must be in our office by March 26, 2004.

*Id*. at *2.

The day that Wise received his policy in the mail, he died suddenly and unexpectedly of a heart attack. His wife mailed the annual premium payment to American General the following day. When she requested the proceeds of the policy, American General denied her claim and returned her premium check. Plaintiff brought claims against American General for, *inter alia,* breach of contract and bad faith under 42 Pa Cons. Stat. Ann. § 8371.

Our appellate court found that "[n]either party was bound by the insurance contract until Wise tendered the premium payment while in good health; Wise was free to turn down the policy, and American General was not obligated to provide insurance coverage." *Wise,* 2006

WL 2390570 at * 3.  Accordingly, "because Wise did not fulfill the requirement of remitting the first premium payment while there was no change in his health, the insurance policy did not go into effect, and American General had no contractual obligation to provide insurance coverage to Wise upon his death." *Id.*

Similar to the decedent in *Wise,* the Decedent in the case *sub judice* died before he paid the premium and before he could certify that the policy was being delivered to him while his health was the same as it was when he applied for the policy.  USFL offered Decedent a policy of insurance, but Decedent did not accept the terms of the policy while he was still alive by signing the delivery documents and paying the premium.

Accordingly, following the directives of the Court of Appeals in its *Wise* decision, summary judgment will be granted to USFL on Plaintiff's claim for breach of contract.

      2.    *Bad Faith Claim*

The Pennsylvania bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371, provides citizens with a private cause of action whenever an insurer acts in "bad faith" towards an insured in an action arising under an insurance policy. *General Accident Ins. Co. v. Federal Kemper Ins. Co.*, 682 A.2d 81, 822 (Pa. Super. 1996).  To state a claim for bad faith, a plaintiff must present clear and convincing evidence that: (1) an insurer denied benefits under a policy without any reasonable basis to do so; and (2) the insurer knowingly or recklessly disregarded its lack of reasonable basis for denying the claim.

The plaintiff in *Wise* also alleged a claim for bad faith.  However, our appellate court found that "[b]ecause there was no insurance policy in effect at the time of Wise's death,

Plaintiff cannot establish a prima facie case under the bad faith statute." *Wise,* 2006 WL 2390570 at * 7.

Again, like the plaintiff in *Wise,* Plaintiff in this case, cannot present any evidence of USFL denying benefits under a policy without any reasonable basis to do so. As set forth *supra,* there was no policy in force and no contract of insurance existed between the parties. Thus, the Court finds and rules that USFL is entitled to summary judgment on Plaintiff's claim for bad faith.

B.        Motion for Summary Judgment filed by Williams Insurance

Plaintiff, in the alternative, argues that if the policy is found not to have been in effect at the time of Decedent's death, then Williams Insurance was negligent in failing to take steps necessary to place the policy in force in a timely and appropriate manner. Plaintiff's argument can be rejected without extensive discussion. It is the established rule in Pennsylvania that an insurance company or agent owes no duty to persons applying for insurance to diligently process insurance applications. *Zayc v. John Hancock Mut. Life Ins. Co.*, 13 A.2d 34 (Pa. 1940). The Pennsylvania Supreme Court in *Zayc* rejected the argument that an insurer had an obligation to accept or reject an application for insurance within a reasonable time "unless, independently of statute or contract, a legal duty devolved upon the insurance company either to accept or reject the application for insurance within a reasonable time." *Id.* at 36.

Thus, the Court finds and rules that Williams Insurance is entitled to summary judgment on Plaintiff's claim for negligence.

## CONCLUSION

For the reasons discussed *supra,* the Court finds that the Motions for Summary Judgment filed by Defendants should be granted in their entirety.  An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREER W. TATE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 02: 04cv0820 |
| ) | |
| U.S. FINANCIAL LIFE INSURANCE ) | |
| COMPANY, a Corporation, and ) | |
| WILLIAMS INSURANCE SERVICES, INC., ) | |
| a corporation, ) | |
| ) | |
| Defendants. ) | |

**ORDER OF COURT**

AND NOW, this 1st day of September, 2006, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1) the Motion for Summary Judgment filed by Defendant U.S. Financial Life Insurance Company is **GRANTED** and judgment is hereby entered in favor of Defendant, U.S. Financial Life Insurance Company ; and

2) the Motion for Summary Judgment filed by Defendant Williams Insurance Services, Inc., is **GRANTED** and judgment is hereby entered in favor of Defendant, Williams Insurance Services, Inc.

The Clerk of Court shall mark this case closed forthwith.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:	Avrum Levicoff, Esquire
Levicoff, Silko & Deemer
Email: alevicoff@lsandd.net

Shawn T. Flaherty, Esquire
Flaherty Fardo
Email: stf@wfflaw.com

Henry M. Sneath, Esquire
Picadio, Sneath, Miller & Norton
Email: hsneath@psmn.com

Kelly A. Williams, Esquire
Picadio, Sneath, Miller & Norton
Email: kwilliams@psmn.com

John D. Waclawski, Jr., Esquire
Dickie, McCamey & Chilcote
Email: jwaclawski@dmclaw.com

Joseph S.D. Christof, II, Esquire
Dickie, McCamey & Chilcote
Email: jchristof@dmclaw.com